UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| FIRST BANKERS CORPORATION, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-09-975 |
| THE WATER WITCH FIRE COMPANY, INC., | * | |
| | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION

Plaintiff, First Bankers Corporation ("FBC"), by its undersigned attorneys, submits this memorandum in opposition to Defendant's motion to dismiss for lack of subject-matter jurisdiction.[1]

## I.   INTRODUCTION

Based in Indiana, FBC is an experienced lender with expertise in the business niche of financing equipment leases by fire companies.  This case arises out of a

---

[1]   Defendant's motion is ambiguously styled as a "motion for judgment (preliminary motion to dismiss)."  Because the pleadings are not "closed," the motion does not qualify as a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c).  Rather, because its thrust is to challenge the existence of subject-matter jurisdiction, the motion should be treated as a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1).  *See* C. Wright & A. Miller, 5B *Federal Practice and Procedure*, § 1350, at 133 ("federal courts should treat an improperly identified motion that actually challenges the court's authority or competence to hear the action as if it properly raised the jurisdictional point").

volunteer fire company's stunning attempt to disavow and renege on formal contracts that

it entered into to borrow money from FBC to finance part of a newly-constructed fire

truck for the company's use.  FBC has filed this civil action seeking:

> (a) a declaratory judgment in Count I that the pertinent
> Escrow Agreement (Exhibit ["Ex."] 2 to the Complaint),
> pursuant to which FBC deposited monies that would totaled
> $200,000 by March 1, 2008, terminated on October 15, 2008;
> and
>
> (b) compensatory damages in Count II for breach of the
> pertinent Lease and Option Agreement (Ex. 1 to the
> Complaint).

In response to FBC's Complaint, Defendant, The Water Witch Fire Company, Inc.

("WWFC"), has filed a preliminary motion to dismiss, arguing that the amount in

controversy does not exceed the required $75,000.  Conceding the formal sufficiency of

the Complaint's allegation of the jurisdictional amount, Defendant's motion relies on

matters outside the pleadings.  For the reasons set forth below, Defendant's arguments are

without merit as a matter of fact and as a matter of law.  Defendant's motion should be

denied.

## II.    FACTUAL BACKGROUND

As alleged in the Complaint, FBC and WWFC entered into the Lease and Option

Agreement and the Escrow Agreement on May 14, 2007.  As those agreements required,

FBC deposited funds into escrow that would total $200,000 as of March 1, 2008.  WWFC

thereafter obtained the desired financing from an alternative source, and then attempted to

ignore and disavow any and all obligations to FBC under the parties' contracts. WWFC

failed to make its first lease payment to FBC as that payment came due on September 1,

2008.

In early October, 2008, FBC learned after the fact that WWFC had filed suit

against FBC seeking a temporary restraining order ("TRO") in Circuit Court for Cecil

County, which had denied the request for a TRO. WWFC never served FBC with any

papers from that lawsuit.

On October 15, 2008, the Escrow Agreement terminated by its own terms. *See* Ex.

2 to Complaint, § 7.07. On that same day, WWFC's counsel, Roger Powell, Esquire, sent

an e-mail to FBC's principal, John Hill, attaching a proposed release that referred to the

parties' contracts as "a process" that had been "initiate[d]" and an "incomplete

transaction" that had not been concluded. *See* Ex. A, attached. On October 29, 2008, Mr.

Hill e-mailed Mr. Powell to state that the "proposed release is one-sided and

unacceptable," and also to suggest a conference call of principals and attorneys to try to

reach a global resolution. *See* Ex. B, attached. WWFC did not respond. On November 6,

2008, Mr. Hill sent another e-mail to Mr. Powell stating that, absent a resolution, FBC

would be forced to file suit in federal court. *See* Ex. C, attached. WWFC did not

respond.

On December 3, 2008, undersigned counsel wrote to Mr. Powell requesting

confirmation that WWFC agreed that the Escrow Agreement had terminated on October

15, 2008, and that WWFC was therefore abandoning any claim to the previously-escrowed funds. *See* Ex. D, attached.  On December 9, 2008, Mr. Powell responded ambiguously. *See* Ex. E, attached.  On December 12, 2008, undersigned counsel wrote to Mr. Powell to report that, absent a contrary written indication from WWFC, FBC would proceed with the understanding that WWFC had abandoned any claim to the previously-escrowed funds. *See* Ex. F, attached.

On December 17, 2008, Mr. Powell sent undersigned counsel a letter stating:

> Respectfully, I have no idea "what you are talking about" in your December 12, 2008 letter.
>
> What your letter does not do is respond to your fiduciary responsibilities nor does it respond to the pertinent portions of my letter of December 9, 2008.
>
> Whatever you do, you proceed at your own peril subject to my client's rights.

*See* Ex. G, attached.

On February 9, 2009, FBC sued WWFC in the District Court of Maryland for Cecil County, seeking net money damages of $24,300.37 based on an "itemized statement and interest worksheet" showing a credit to WWFC $202,122.63 for "return of escrow monies with earned interest." *See* Exhibit to Defendant's motion, p. 4.  Before responding to FBC's complaint in that case ("FBC's Cecil County Lawsuit"), WWFC filed a request for jury trial, the effect of which would have been to transfer that case to the Circuit Court for Cecil County.  FBC had no way of knowing what position WWFC

intended to take, or what counterclaims WWFC might file, in FBC's Cecil County

Lawsuit regarding the Escrow Agreement.  Rather than subject itself to the risks of

litigation in the Circuit Court for Cecil County concerning the Escrow Agreement as well

as the Lease and Option Agreement, FBC filed a notice of voluntary dismissal without

prejudice.

On April 16, 2009, FBC filed this action based on this Court's diversity

jurisdiction, seeking a declaratory judgment on the parties' rights under the Escrow

Agreement (Count I) and money damages for WWFC's breach of the Lease and Option

Agreement (Count II).  Between April 20 and May 5, 2009, the parties' counsel

exchanged correspondence concerning the existence of federal jurisdiction in this matter,

which correspondence is collectively attached as Ex. H.  On June 5, 2009, WWFC

responded to FBC's Complaint by filing its "motion for judgment (preliminary motion to

dismiss)," to which WWFC has collectively attached various documents as a single

exhibit.

## III.    ARGUMENT

### A.    As The Record Demonstrates, An Actual Controversy Existed Over The Escrow Agreement When FBC Filed Its Complaint In This Action

The existence of the required amount in controversy is determined as of the date

that an action is commenced in federal court.  *See, e.g., Griffin v. Red Run Lodge, Inc.*,

610 F.2d 1198, 1204 (4th Cir. 1979); C. Wright & A. Miller, 14B *supra*, § 3702, at 62.

Moreover, where a litigant seeks declaratory judgment, "the test for determining the amount in controversy in a diversity proceeding is 'the pecuniary result to either party which [a] judgment would produce.'" *Dixon v. Edwards*, 290 F.3d 699, 710 (4th Cir. 2002) (citation omitted). *See also* C. Wright & A. Miller, 14B *supra*, § 3708, at 252-53.

As of April 16, 2009, WWFC had done nothing to disavow:

> (a) its October 15, 2008, proposal that it would agree to release the escrow funds on the condition that FBC agreed that, rather than having entered into binding contracts, the parties had merely "initiate[d]" a "process" that ended in an "incomplete transaction" (Ex. A); or
>
> (b) Mr. Powell's letters of December 3 and 16, 2008, which, threateningly reserved – rather than abandoned – WWFC's potential claim or counterclaim regarding the Escrow Agreement.

FBC had repeatedly tried to resolve the issue of the Escrow Agreement (as well as the entire dispute more globally), but WWFC had responded to those efforts either by ignoring them or by threatening FBC.

Because Count I concerns an actual controversy, generated by Defendant, as to the $202,122.63 deposited pursuant to the Escrow Agreement, the amount-in-controversy requirement is met.

## B.   **Defendant's Arguments Are Without Merit**

Defendant contends that, because it allegedly "agreed to release the escrow monies and accrued interest thereon," there is no actual controversy regarding those monies. Defendant further argues that FBC's filing of its Cecil County Lawsuit seeking only

money damages now bars FBC from meeting the jurisdictional amount.  Neither of

Defendant's argument is persuasive.

As discussed, in October, 2008, Defendant conditioned its offer to release the

escrow monies on a demand that FBC concede that the parties had engaged only in an

"incomplete transaction," rather than having entered into valid contracts.  Thereafter,

when undersigned counsel repeatedly tried to confirm that Defendant would abandon any

claim under the Escrow Agreement, Defendant's counsel replied on December 17, 2008,

by writing, "Whatever you do, you proceed at your own peril subject to my client's

rights."  These facts squarely support FBC's allegation of an actual controversy

concerning the Escrow Agreement and the $200,000+/- that had been deposited

thereunder.[2]

Defendant's fall-back argument is that FBC somehow waived diversity jurisdiction

by filing (and quickly dismissing without prejudice) its Cecil County Lawsuit.  Contrary

to Defendant's argument, however, FBC's filing of its Cecil County Lawsuit was a failed

bid to try to disregard the escrow issue for purposes of seeking what then seemed to be

the most efficient available resolution of FBC's claim for money damages.  By filing a

demand for jury trial, Defendant thwarted that bid for efficiency, leading FBC to exercise

---

[2]      Because the amount in controversy is determined as of the time a lawsuit is filed, Defendant's self-serving statements after the lawsuit's filing are irrelevant to the jurisdictional inquiry.

its legal rights (a) to dismiss the Cecil County Lawsuit without prejudice and (b) to file this diversity action seeking a global resolution of the issues between the parties.

FBC's Complaint in the Cecil County Lawsuit could not and did not resolve (or even seek to resolve) the parties' lingering dispute concerning the Escrow Agreement that existed in light of Defendant's October 15, 2008 proposal and Defendant's counsel's December 17, 2008 letter.[3] By unsuccessfully seeking an efficient resolution of its claim for money damages in state district court, FBC did not waive its right to proceed in federal court with claims for both money damages and declaratory judgment.

## III.   CONCLUSION

When FBC filed its Complaint in this action, an actual controversy existed as to both the Escrow Agreement and the Lease and Option Agreement.  Consequently, the amount-in-controversy requirement is met, and Defendant's motion should be denied.

[signature on next page]

---

[3]      Consistent with its desire for an efficient global resolution of this matter, FBC intends to file, within the next three weeks or less, a motion for summary judgment on both counts of its Complaint in this action.

Respectfully submitted,

   /s/                                
Geoffrey H. Genth, Bar No. 08735
ggenth@kg-law.com
Mary Beth Ewen, Bar No. 28902
mewen@kg-law.com
KRAMON & GRAHAM, P.A.
One South Street, Suite 2600
Baltimore, Maryland  21202-3201
tel.: (410) 752-6030
fax: (410) 539-1269

Counsel for First Bankers Corporation

Date: June 22, 2009.